**KILPATRICK TOWNSEND & STOCKTON LLP**

Evan S. Nadel (CA Bar No. 213230)
*ENadel@kilpatricktownsend.com*
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Telephone: (415) 576-0200; Facsimile: (415) 576-0300

Marc A. Lieberstein (*pro hac vice* application forthcoming)
*mlieberstein@kilpatricktownsend.com*
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 775-8700; Facsimile: (212) 775-8800

Kristin M. Adams (*pro hac vice* application forthcoming)
*KMAdams@kilpatricktownsend.com*
1100 Peachtree Street N.E., Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500; Facsimile: (404) 815.6555

*Attorneys for Plaintiff*
*Chippendales USA, LLC*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHIPPENDALES USA, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>CHRISTIAN W. BANERJEE, STRIPPENDALES CORPORATION, STRIPPENDALES LLC, and STRIPPENDALES69 LLC<br><br>*Defendants.* | **CASE NO.   2:23-cv-08630**<br><br>**COMPLAINT FOR:**<br><br>**Federal Trademark Infringement (15 U.S.C. § 1114(1));**<br><br>**Federal Trademark Counterfeiting (15 U.S.C. § 1114;**<br><br>**Federal Unfair Competition (15 U.S.C. § 1125(a)); and**<br><br>**California Unfair Business Practices (Cal. Bus. & Prof. Code § 17200)**<br><br>**JURY TRIAL DEMANDED** |



COMPLAINT – Case No. 2:23-cv-08630

1.     Plaintiff Chippendales USA, LLC ("Plaintiff") brings this action to stop Defendants Christian W. Banerjee, Strippendales Corporation, Strippendales LLC, and Strippendales69 LLC (collectively, "Defendants") from continuing their willful infringement of Plaintiff's CHIPPENDALES trademarks.

2.     Defendants are using Plaintiff's exact CHIPPENDALES mark, and confusingly similar variations of Plaintiff's marks, to sell the same exact services Plaintiff offers. Defendants have even adopted a well-known former version of Plaintiff's bow tie design mark, in a clear effort to capitalize on the fame and goodwill of Plaintiff's CHIPPENDALES marks, and have even referred to themselves as "The Real Chippendale's":



3.     Plaintiff attempted to protect its trademarks and prevent further consumer confusion without court involvement, sending Defendants a cease-and-desist letter in June 2023. But rather than cease their infringing activities, Defendants actually expanded their unlawful activities.

4.     The consumer confusion Defendants are causing is irreparably harming Plaintiff, given that Plaintiff is now being associated with Defendants—who have a 1-star rating on Yelp and have received public reviews from women accusing Defendants of being "disgusting," "disrespectful," and "degrading to women."

5.     To make matters worse, Defendants have repeatedly claimed that Plaintiff fraudulently stole the CHIPPENDALES business and brand, and that Defendant Christian Banerjee is "the actual owner of Chippendales." But Defendants should be fully aware of Plaintiff's exclusive rights in the CHIPPENDALES marks, because on August 19, 2023, the U.S. District Court for the Central District of California entered judgment declaring Plaintiff the rightful and exclusive owner of common law and registered rights in the CHIPPENDALES Trademarks. Defendants' assertions otherwise are not only baseless but are exacerbating the confusion and harm caused by their infringement.

6.     Plaintiff therefore seeks an injunction to stop Defendants' infringement and unfair competition, as well as statutory damages and other legal and equitable remedies. Plaintiff further alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

7.     Plaintiff is a Delaware limited liability company that is comprised of four members, each of whom is a natural person domiciled in New York state.

8.     Plaintiff owns and operates the world-famous CHIPPENDALES entertainment brand that produces Broadway-style, burlesque shows worldwide, including within the United States.

9.     Christian W. Banerjee is an individual who, on information and belief, resides and is domiciled in Los Angeles, California. He has held himself out as "Chris Bane," "Bane Diesel," "Bane Chippendale," and "Bane Strippendale," and is referred to herein as "Christian Banerjee."

10.    Strippendales Corporation is a California general stock corporation



with its principal place of business at 5305 Cochran Street 103, Simi Valley, California 93063.

11.    Christian Banerjee is the sole Officer and Director of Strippendales Corporation, as shown in California Secretary of State records.

12.    Strippendales LLC is a California limited liability company with its principal place of business at 1200 Pacific Coast Highway 217, Huntington Beach, California 92648.

13.    Strippendales LLC was formed by Christian Banerjee, and Christian Banerjee is the sole member of the company, as shown in California Secretary of State records.

14.    Strippendales69 LLC is a California limited liability company with its principal place of business at 1200 Pacific Coast Highway 217, Huntington Beach, California 92648.

15.    Strippendales69 LLC was formed by Christian Banerjee and is comprised of one member, as shown in California Secretary of State records. On information and belief, Christian Banerjee is the sole member of Strippendales69 LLC.

16.    Strippendales Corporation, Strippendales LLC, and Strippendales69 LLC will be collectively referred to as "Strippendales."

17.    Plaintiff's claims arise under the Lanham Act, 15 U.S.C. §§ 1114, 1117, 1125 *et seq*., and California statutory and common law.

18.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b) (trademark and unfair competition), 28 U.S.C. § 1331 (federal question), and 15 U.S.C. § 1121 (Lanham Act). This Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction). Further, the Court has jurisdiction under 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds



1 | $75,000, exclusive of interest and costs.

2 |     19.    Defendants are subject to personal jurisdiction in this District, and

3 | venue is proper pursuant to 28 U.S.C. § 1391(b), based on the foregoing and

4 | because Defendants regularly conduct business in this District, actively solicit

5 | customers in this District, and reside in this District. Upon information and belief,

6 | Defendants have provided services and distributed infringing products, services, and

7 | advertising under the infringing trademarks in this District.

8 | **FACTUAL ALLEGATIONS**

9 | **I.    History of the CHIPPENDALES Brand**

10 |     20.    The CHIPPENDALES mark identifies one of the world's most

11 | recognized brand names, providing entertainment for women and producing

12 | Broadway-style, burlesque shows for the ultimate "girls' night out."

13 |     21.    The CHIPPENDALES performance troupe was established in Los

14 | Angeles in 1979 as the world's first all-male dance act.

15 |     22.    From its founding through today, CHIPPENDALES dancers have been

16 | immediately recognizable by their "Cuffs and Collar" stage costume of a white shirt

17 | collar with bow tie, and white wrist cuffs, worn on an otherwise bare torso.

18 |     23.    This costume has been described as "the iconic cuffs and collar" by

19 | *People Magazine*.

20 |     24.    The CHIPPENDALES revue has received unsolicited media attention

21 | from myriad sources, including the *Los Angeles Times*, *Entertainment Tonight*, and

22 | countless other traditional and online media outlets over the span of its existence,

23 | including at present.

24 |     25.    Soon after the CHIPPENDALES show debuted, it became a cultural

25 | phenomenon that quickly led to the opening of another CHIPPENDALES club in

26 | New York City, followed by CHIPPENDALES clubs in Dallas and Denver, and

27 | touring CHIPPENDALES troupes performing in nearly every state in the United

28 |



States, including California.

26.     The CHIPPENDALES revue's popularity also spawned a vast array of licensed merchandise, such as the wildly popular annual calendars and apparel.

27.     "Chippendales" soon became—and remains—a household name, and it is a mainstay of pop culture references across television, film, written materials, and other media.

28.     The CHIPPENDALES revue has been referenced in various feature films and television shows, including (famously) *Saturday Night Live*, of which a screenshot is included below.[1]





29.     This *Saturday Night Live* "Chippendales Audition" skit alone has approximately 8.6 million views and plainly showcases the prevalence of the

---

[1] *Saturday Night Live* "Chippendales Audition" skit is available online at:
https://www.youtube.com/watch?v=stqG2ihMvP0.



CHIPPENDALES brand and marks in American culture.

30.   Plaintiff brought the CHIPPENDALES revue to Las Vegas in 2002, where it has delighted audiences for more than 20 years and continues to do so.

31.   Today, the CHIPPENDALES revue continues to entertain sold-out audiences from the CHIPPENDALES Theatre inside the Rio Hotel & Casino in Las Vegas, as well as at U.S. and international venues visited by its touring productions, including in California.

32.   Annually, CHIPPENDALES productions are seen by over two million people worldwide.

33.   The Las Vegas CHIPPENDALES production has featured guest hosts such as international supermodel Tyson Beckford, actors Ian Ziering and Joey Lawrence, and *Dancing with the Stars* and *America's Next Top Model* champion Nyle DiMarco.

34.   The show has continuously won Las Vegas Review Journal's annual awards for "Best Male Review" and "Best Bachelorette Party," and every year, thousands of Californians attend the show.

**II.    Plaintiff's Famous CHIPPENDALES Trademarks**

35.   Through its and its predecessors in interest's continuous, exclusive, and extensive use of the CHIPPENDALES mark and CHIPPENDALES design marks over the last 45 years for a wide range of products and services, Plaintiff has developed extensive rights in those trademarks, through federal registrations and at common law.

36.   Plaintiff owns numerous federal registrations on the Principal Register of the United States Patent and Trademark Office ("USPTO") and foreign trademark registrations for the CHIPPENDALES mark and CHIPPENDALES design marks (Plaintiff's common law and registered marks are collectively referred to herein as the "CHIPPENDALES Trademarks").



37.    Plaintiff has exclusively owned all rights, title, and interest in the CHIPPENDALES Trademarks since at least 2000.

38.    Plaintiff's relevant U.S. registrations are identified below.

| Trademark | Reg. No./ Reg. Date | Goods/Services | Date of First Use | Origin |
|---|---|---|---|---|
| **CHIPPENDALES** <br><br> Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 1197438 <br><br> 6/8/82 | 41: Entertainment services, namely, male dance exhibitions. | 12/1/78 | Assigned to Plaintiff as part of 2000 Asset Purchase Agreement |
| **CHIPPENDALES** <br><br> Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 1330855 <br><br> 4/16/85 | 16: Calenders, playing cards, posters. | 7/3/81 | Assigned to Plaintiff as part of 2000 Asset Purchase Agreement |
| **CHIPPENDALES** <br><br> Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 2802430 <br><br> 1/6/04 | 9: Series of DVDs featuring music and male nightclub entertainers. | 1987 | Plaintiff filed Application |
| **CHIPPENDALES** <br><br> Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 3127649 <br><br> 8/8/06 | 16: Party supplies, namely, paper napkins; pin-ups, namely, flat, cardboard poster-like cutouts of men with adjustable hands, arms, and legs. <br><br> 25: Clothing, namely headwear, hats, tank tops, t-shirts, long sleeve t-shirts, sweatshirts, shorts, nightshirts and undergarments. <br><br> 41: Entertainment services, namely, live theatrical and musical floor shows provided at night clubs and theaters. <br><br> 45: Providing online electronic greeting cards via the internet. | 16: 7/31/01 <br><br> 25: 2/7/00 <br><br> 41: 7/3/81 <br><br> 45: 2/19/06 | Plaintiff filed Application |
| **CHIPPENDALES** <br><br> Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 3690717 <br><br> 9/29/09 | 43: Waiter services for serving drink; bar services. | 2/1/05 | Plaintiff filed Application |
| **CHIPPENDALES** <br><br> Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 3981590 <br><br> 6/21/11 | 10: Electric massage appliances, namely, electric vibrating massager. | 10/1/10 | Plaintiff filed Application |
| **CHIPPENDALES & Bow Tie Design** | 5203733 | 10: Electric massage appliances, namely, electric | 10: 10/15 | Plaintiff filed Application |

| | | 5/16/17 | vibrating massager. | 16: 10/15 | |
|---|---|---|---|---|---|
| CHIPPENDALES | | | 16: Calendars and paper goods, namely, pin-ups, namely, flat, cardboard, poster-like cutouts of men with adjustable hands, arms and legs. | 21: 10/15 25: 10/15 41: 9/15 | |
| | | | 21: Barware, namely, shotglasses. | | |
| | | | 25: Clothing, namely, headwear, hats, tank tops; t-shirts, long sleeve t-shirts, sweatshirts, shorts, nightshirts and undergarments. | | |
| | | | 41: Entertainment services, namely, live theatrical and musical floor shows provided at night clubs and theaters. | | |

39. These registrations for the CHIPPENDALES Trademarks are valid and in full force and effect.

40. Copies of the registration certificates for the registered CHIPPENDALES Trademarks referenced in Paragraphs 37-38 are attached as **Exhibit A.**

41. Plaintiff's Reg. No. 5203733, for its CHIPPENDALES & Bow Tie Design mark, constitutes *prima facie* evidence of Plaintiff's ownership of the mark and exclusive rights to use the mark in connection with the goods and services recited in the registration.

42. Moreover, all of Plaintiff's other U.S. registrations for its CHIPPENDALES Trademarks listed above have become incontestable, and therefore constitute conclusive evidence of Plaintiff's ownership of and exclusive rights to use the CHIPPENDALES Trademarks in connection with the goods and services recited in those registrations, namely, Reg. Nos. 1197438; 1330855; 2802430; 3127649; 3690717; and 3981590.

43. As early as July 2001, Plaintiff adopted and used the CHIPPENDALES



& Design trademark shown below:

Chippendales

44.     Plaintiff previously registered this design with the USPTO in Classes 16, 25, 38, and 41, as memorialized in U.S. Reg. Nos 3212353, 3191552, 3999348, 3191558, and 3191557.

45.     Although these registrations have not been renewed, a significant number of consumers in California and throughout the U.S. immediately associate the design with Plaintiff, and the design retains significant residual goodwill among those consumers.

46.     The CHIPPENDALES Trademarks are each inherently distinctive, arbitrary marks, and they are entitled to the broadest scope of protection.

47.     The CHIPPENDALES Trademarks are also commercially strong within California and throughout the United States.

48.     For the last 45 years, Plaintiff and its predecessors in interest have invested enormous amounts of time, money, and effort into advertising and promoting the products and services sold under the CHIPPENDALES Trademarks in California and throughout the United States.

49.     Through the vast promotion and investment in the CHIPPENDALES brand—combined with extensive publicity and sales—Plaintiff has acquired enormous goodwill in its CHIPPENDALES Trademarks.

50.     Plaintiff also exclusively owns all rights, title, and interest in the domain names *Chippendales.com*; *Chippendales.org*; *Chippendale.net*; and *Chippendale.org*.

51.     Plaintiff has continuously and exclusively used the CHIPPENDALES Trademarks on a wide variety of products, including apparel and accessories, exercise programs, online streaming events, gifts, slot machines, video games, and



adult products.

52.     Plaintiff offers its CHIPPENDALES-branded products at venues in California and throughout the United States where its touring productions perform, and on its website at *Chippendales.com*, which is accessible to and used by consumers in California and throughout the United States.

53.     The CHIPPENDALES Trademarks became well-known in California and throughout the United States long before Defendants began their infringing activities.

54.     On August 19, 2023, the Honorable Percy Anderson of the U.S. District Court for the Central District of California entered judgment declaring Plaintiff the rightful and exclusive owner of common law and registered rights in the CHIPPENDALES Trademarks, as acquired through a March 30, 2000 asset purchase agreement and through Plaintiff's more than 20 years of exclusive and continuous use of the marks. *Chippendales USA LLC v. Jesus Jesse Banerjee*, No. 23-cv-03672 PA (PDx) (C.D. Cal. Aug. 19, 2023).

### III.     <u>Defendants' Infringement of the CHIPPENDALES Trademarks</u>

55.     Defendants have no rights in, or rights to use, any CHIPPENDALES Trademarks or confusingly similar mark.

56.     In addition to using the CHIPPENDALES Trademarks to sell tickets for public performances of all-male revues, Defendants offer other entertainment services in connection with bachelorette parties and private parties ("Defendants' Services")—services identical to services Plaintiff offers under its CHIPPENDALES Trademarks.

57.     Defendants' Services are targeted towards the same types of consumers to whom Plaintiff markets its CHIPPENDALES services, including women looking for an all-male dance revue.

58.     Defendants are using the CHIPPENDALES Trademarks and



confusingly similar imitations thereof in connection with Defendants' all-male revues and other entertainment services, without authorization from Plaintiff.

59. Defendants have offered Defendants' Services under the marks CHIPPENDALES, SON OF CHIPPENDALES, and STRIPPENDALES (the "Infringing Marks"). Such use is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities among consumers in California and throughout the United States.

60. Defendants' conduct has been wanton, malicious, willful, and intended to cause confusion with Plaintiff and to capitalize on the goodwill Plaintiff earned in the CHIPPENDALES Trademarks.

61. The harm caused by Defendants' willful conduct is exacerbated by Defendants' repeated use of the trademark registration symbol "®" in connection with the STRIPPENDALES mark, despite the fact that the STRIPPENDALES mark is not registered with the USPTO.

62. The USPTO's Trademark Manual of Examining Procedure § 906.4 provides: "Improper use of the federal registration symbol, ®, that is deliberate and intends to deceive or mislead the public or the USPTO is fraud."

63. Defendants' improper use of the Infringing Marks with the federal registration symbol in connection with an all-male revue in San Diego, California is shown below:





64.     Defendants' improper use of the Infringing Marks with the federal registration symbol in connection with an all-male revue in Fallbrook, California is shown below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

19      65.     Defendants' improper use of the infringing SON OF CHIPPENDALES

20   mark in connection with an all-male revue in San Diego, California is shown below:

21
22
23
24
25
26
27
28





66.     Defendants have also created merchandise bearing the Infringing Marks.

67.     Defendants have advertised merchandise bearing the Infringing Marks on Instagram, as shown below:



68.     After learning of Defendants' infringing conduct, Plaintiff sent Defendants a letter on June 5, 2023, informing Defendants of Plaintiff's rights in the CHIPPENDALES Trademarks and demanding that Defendants cease their infringing conduct.

69.     Rather than ceasing their infringing conduct, Defendants expanded it.

70.     In or around June 2023, Defendants began using Plaintiff's exact CHIPPENDALES mark in connection with Defendants' Services, as shown in the July 24, 2023 post on Christian Banerjee's public Instagram account:





71.     Defendants have also registered domain names that incorporate confusingly similar imitations of the CHIPPENDALES Trademarks, including *strippendales.com* and *thestrippendales.com*.

72.     Defendants prominently display the Infringing Marks—improperly using the federal registration symbol—at the top of the homepage of the *strippendales.com* website, which offers all-male revue and other entertainment services.

73.     The top of Defendants' *strippendales.com* website prominently displays the infringing STRIPPENDALES mark, as shown below:





74.    In designing the website at *strippendales.com*, Defendants wantonly, maliciously, and willfully copied the color scheme, tagline, layout, and design features of Plaintiff's website, shown below and accessible at *chippendales.com*.



75.     Defendants' conduct has created actual confusion among consumers, eroded the goodwill Plaintiff has earned in the CHIPPENDALES Trademarks, and is causing Plaintiff irreparable harm.

76.     For example, one consumer wrote in a January 10, 2023 post on Facebook that her "favorite dancers Chippendales . . . are now called Strippendales out of California !!! Times have certainly changed !!!"

77.     Defendants are also causing reputational harm to Plaintiff. Consumers experiencing low-quality services provided by Defendants who confuse Defendants with Plaintiff are likely to attribute such low-quality services to Plaintiff.

78.     Numerous consumers have reported dissatisfaction with Defendants' Services. For example, one venue manager where Defendants promoted STRIPPENDALES-branded services told *Vice*: "I've never experienced [a performance] this unprofessional." *See* https://www.vice.com/en/article/88n7v3/the-stripping-scion-of-chippendales (alteration in original).

79.     The Yelp rating for Strippendales is 1 star out of 5.

80.     Yelp reviews describe the experience with Defendants as "unprofessional" and "disrespectful."

81.     One Yelp reviewer in California reported that Defendants were "very degrading to women":



82.     Another Yelp reviewer in Los Angeles publicly posted a scathing review, along with screenshots of her text conversations with Defendants:



COMPLAINT – Case No. 2:23-cv-08630

- 18 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Marlene D.**
Los Angeles, CA
⬜ 0  ⬜ 1

⭐️☆☆☆☆ 8/7/2023

I totally agree with Whitney. I wish i would've know how rude and disrespectful this company was. We personally selected two dancers and on the day of we got two different dancers. "Chris" who texted me to confirm all details said we had Wolf and Robbie but neither showed up. One of the guys was Bane/Cowboy and the other was Colombiano who was 35 minutes late. Clearly there was a riff between the two guys. Colombiano was WAAAY too handsy touching all us girls inappropriately. They are not queer friendly! We had a male attendee and he wasn't not given any love. Colombiano also stole $40 from the bride-to-be.

i emailed the company feedback on our experience and not even an apology. Instead i was called a Karen for sharing my experience. To sum up what i shared with them:

1. Lack of communication (not notifying us of late arrivals)
2. Bait and switch (ordering one thing and getting another)
3. Discrimination against a male
4. Robbery by one of the dancers ($40 taken from bride to be)
5. Unprofessionalism (being late and playing loud music outside the home)
6. Pricing gauging (saying we actually owed more had we not provided horns)

DO NOT USE THEM: Use Hulk-O-Mania which we used before and were cheaper and queer friendly.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18  <u>**CLAIMS FOR RELIEF**</u>

19  <u>**COUNT I**</u>

20  **Federal Trademark Infringement**

21  **(15 U.S.C. § 1114)**

22      83.    Plaintiff repeats and incorporates by reference the allegations in the

23  preceding paragraphs.

24      84.    Plaintiff is the sole and exclusive owner of the CHIPPENDALES

25  Trademarks.

26      85.    Plaintiff owns federal registrations for its CHIPPENDALES

27  Trademarks, namely, U.S. Reg. Nos. 1197438; 1330855; 2802430; 3127649;

28  3690717; 3981590; and 5203733.



86.     Through Plaintiff and Plaintiff's predecessors in interest, the CHIPPENDALES mark has been used continuously since 1978. Plaintiff therefore owns extensive common-law rights in the mark.

87.     The CHIPPENDALES Trademarks are valid and enforceable, as are the foregoing registrations, and certain of them have attained incontestable status.

88.     Without Plaintiff's authorization, Defendants have used in commerce marks that are highly similar to the CHIPPENDALES Trademarks, in connection with services that are identical to those offered by Plaintiff under the CHIPPENDALES Trademarks.

89.     Defendants' conduct is likely to cause confusion, or to cause mistake, or to deceive consumers.

90.     Defendants' conduct has caused and, unless enjoined by this Court, will continue to cause irreparable harm to Plaintiff and to Plaintiff's goodwill in the CHIPPENDALES Trademarks.

91.     At all times, Defendants' conduct has been wanton, malicious, willful, and intended to cause confusion among consumers and to capitalize on Plaintiff's goodwill in the CHIPPENDALES Trademarks.

92.     Defendants' conduct is in violation of 15 U.S.C. § 1114(1).

93.     Defendants have caused and are likely to continue causing substantial irreparable injury to the public and to Plaintiff; therefore, Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT II

### Federal Trademark Counterfeiting

### (15 U.S.C. § 1114)

94.     Plaintiff repeats and incorporates by reference the allegations in the



preceding paragraphs.

95.     Plaintiff is the sole and exclusive owner of the CHIPPENDALES Trademarks.

96.     Plaintiff owns federal registrations for its CHIPPENDALES Trademarks, namely, U.S. Reg. Nos. 1197438; 1330855; 2802430; 3127649; 3690717; 3981590; and 5203733.

97.     The CHIPPENDALES Trademarks are valid and enforceable, as are the foregoing registrations, and certain of them have attained incontestable status.

98.     Without Plaintiff's authorization, Defendants have used in commerce spurious marks that are identical with, or substantially indistinguishable from, the CHIPPENDALES Trademarks, in connection with the same services described in Plaintiff's federal registrations for those marks, including entertainment services in the nature of male dance revues.

99.     Defendants' conduct is likely to cause confusion, or to cause mistake, or to deceive consumers.

100.   At all times, Defendants' conduct has been wanton, malicious, willful, and intended to cause confusion among consumers and to capitalize on Plaintiff's goodwill in the CHIPPENDALES Trademarks. At all times, Defendants have known that their spurious marks are counterfeit marks in connection with the sale, offering for sale, or distribution of Defendants' goods and services.

101.   Defendants have used counterfeit marks, as that term is defined in 15 U.S.C. § 1116(d), and Defendants are accordingly liable under the anti-counterfeiting provisions of the Lanham Act.

102.   Defendants have caused and are likely to continue causing substantial irreparable injury to the public and to Plaintiff; therefore, Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114,



1116, and 1117. Additionally, pursuant to 15 U.S.C. § 1117(b), Plaintiff is entitled to trebling of the greater of profits and damages, and to prejudgment interest. Alternatively, pursuant to 15 U.S.C. § 1117(c)(2), Plaintiff is entitled to recover statutory damages for Defendants' willful use of counterfeit marks, in an amount of up to $2,000,000.

## COUNT III
## Federal Unfair Competition
## (15 U.S.C. § 1125(a))

103.   Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

104.   Defendants' use of marks that are confusingly similar to Plaintiff's CHIPPENDALES Trademarks has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' services are offered and rendered by Plaintiff, or that services are affiliated, connected, or associated with Plaintiff, or have Plaintiff's sponsorship, endorsement, or approval.

105.   Defendants' conduct constitutes the use of symbols or devices tending falsely to describe the infringing services, within the meaning of 15 U.S.C. § 1125(a). Defendants' conduct has caused, and unless enjoined by this Court, will continue to cause, a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by its CHIPPENDALES Trademarks, for which Plaintiff has no adequate remedy at law.

106.   At all times, Defendants' conduct has been wanton, malicious, willful, and intended to cause confusion among consumers and to capitalize on Plaintiff's goodwill in the CHIPPENDALES Trademarks.

107.   Defendants have caused and are likely to continue causing substantial



irreparable injury to the public and to Plaintiff; therefore, Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114, 1116, and 1117.

**COUNT IV**

**California Unfair Business Practices**

**(California Business & Professions Code § 17200 *et seq.*)**

108.   Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs.

109.   Defendants' conduct is likely to mislead or deceive the general public and therefore constitutes a violation of California Business and Professions Code § 17200 *et seq*.

110.   Defendants' conduct constitutes a violation of the Lanham Act and the statutory and common trademark law of California and other states.

111.   Defendants' conduct is causing confusion and deception among consumers and the general public, it offends public policy as set forth in the Lanham Act and the statutory and common trademark law of California and other states, it is substantially injurious to consumers, and it is without justification.

112.   Defendants' conduct is likely to deceive reasonable consumers, or has the capacity or tendency to do so, and Defendants' misrepresentations in purely commercial advertising as to their ownership of the CHIPPENDALES Trademarks are material.

113.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been injured in fact and has lost money and profits and has suffered injury to its reputation and goodwill. Such harm will continue unless Defendants' acts are enjoined by the Court. Plaintiff has no adequate remedy at law, and therefore is entitled to an injunction prohibiting Defendants from continuing the



practices described above.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff respectfully prays that the Court enter judgment in its favor for each claim set forth above and award Plaintiff relief including, but not limited to, the following:

1.     An order that Defendants and their agents, employees, or persons in active concert or participation with them, be permanently enjoined from interfering in any manner, in any jurisdiction, with Plaintiff's ownership or use of its CHIPPENDALES Trademarks, including by alleging ownership of the CHIPPENDALES Trademarks, brand, or company in commercial advertising, marketing, or promotion;

2.     An order that Defendants and their agents, employees, or persons in active concert or participation with them, be permanently enjoined from:

       a.   Using in commerce any of the CHIPPENDALES Trademarks or any word, design, symbol, device, or combination that is likely to cause confusion or mistake, or to deceive, including, without limitation: CHIPPENDALES; CHIPPENDALE; CHIPPENDALES & Bow Tie Design (*see* U.S. Reg. No. 5203733); SON OF CHIPPENDALES; BANE CHIPPENDALE; THE REAL CHIPPENDALES; STRIPPENDALES; and BANE STRIPPENDALE;

       b.   Registering, owning, or operating any domain name that includes any of the CHIPPENDALES Trademarks or any word, term, or combination that is likely to cause confusion or mistake, or to deceive, including, without limitation: CHIPPENDALES; CHIPPENDALE; STRIPPENDALES; and STRIPPENDALE;

       c.   Otherwise competing with Plaintiff unfairly, unlawfully, or



fraudulently.

3.     An order requiring Defendants and their agents, employees, or persons in active concert or participation with them, including domain registrars, to take all reasonable steps to immediately transfer to Plaintiff any domain name owned, operated, or controlled by Defendants or their agents, employees, or persons in active concert or participation with them, that includes any of the following terms or any confusingly similar version thereof: CHIPPENDALES; CHIPPENDALE; STRIPPENDALES; or STRIPPENDALE.

4.     An order requiring Defendants to deliver up for impoundment and for destruction, any goods or other products and all signs, advertising, promotional materials, or other materials in Defendants' possession, custody, or control that are found to adopt, infringe, or dilute Plaintiff's CHIPPENDALES Trademarks or that otherwise unfairly compete with Plaintiff and its products and services;

5.     An order awarding Plaintiff its damages and lost profits, and Defendants' profits, in an amount to be proven at trial;

6.     An order that such damages and profits be trebled and awarded to Plaintiff and that it be awarded its costs, reasonable attorney's fees, and expenses in this suit under 15 U.S.C. § 1117, as a result of Defendants' willful acts in violation of the Lanham Act;

7.     An order awarding Plaintiff prejudgment and post judgment interest; and

8.     An order awarding to Plaintiff all such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Chippendales USA, LLC demands that this action be tried to a jury.



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: October 12, 2023

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By:   */s/ Evan S. Nadel*

Evan S. Nadel (CA Bar No. 213230)
*ENadel@kilpatricktownsend.com*
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Telephone: (415) 576-0200; Facsimile: (415) 576-0300

Marc A. Lieberstein (*pro hac vice* application forthcoming)
*mlieberstein@kilpatricktownsend.com*
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 775-8700; Facsimile: (212) 775-8800

Kristin M. Adams (*pro hac vice* application forthcoming)
*KMAdams@kilpatricktownsend.com*
1100 Peachtree Street N.E., Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500; Facsimile: (404) 815.6555

*Attorneys for Plaintiff*
*Chippendales USA, LLC*

