**KILPATRICK TOWNSEND & STOCKTON LLP**
Evan S. Nadel (CA Bar No. 213230)
*ENadel@ktslaw.com*
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Telephone: (415) 576-0200; Facsimile: (415) 576-0300

Kollin J. Zimmermann (CA Bar No. 273092)
*kzimmermann@ktslaw.com*
1801 Century Park East Suite 2300
Los Angeles, California 90067
Telephone: (310) 248-3830; Facsimile: (310) 860-0363

Marc A. Lieberstein (Admitted *pro hac vice*)
*mlieberstein@ktslaw.com*
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 775-8700; Facsimile: (212) 775-8800

Kristin M. Adams (Admitted *pro hac vice*)
*KMAdams@ktslaw.com*
1100 Peachtree Street N.E., Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500; Facsimile: (404) 815-6555

*Attorneys for Plaintiff*
*Chippendales USA, LLC*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHIPPENDALES USA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTIAN W. BANERJEE, STRIPPENDALES CORPORATION, STRIPPENDALES LLC, and STRIPPENDALES69 LLC,<br><br>Defendants. | Case No. 2:23-cv-08630-PA (PDx)<br>*Hon. Judge Percy Anderson*<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT**<br><br>Hearing Date: June 3, 2024<br>Time: 1:30 pm<br>Courtroom: 9A<br><br>Filed: October 12, 2023 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................ 1

II.    STATEMENT OF FACTS ................................................................... 1

   A.   Procedural Background ................................................................ 1

   B.   Plaintiff and Its World-Famous CHIPPENDALES Brand ............... 2

   C.   Plaintiff's Rights in and Registrations for Its Famous CHIPPENDALES Trademarks ................................................................................. 3

   D.   Defendants' Infringement of the CHIPPENDALES Trademarks .......... 6

III.   ARGUMENT ..................................................................................... 8

   A.   The *Eitel* Factors Favor Entry of Default Judgment ......................... 8

      1.   Plaintiff Will Be Prejudiced Absent a Default Judgment ............. 9

      2.   Plaintiff's Complaint is Sufficiently Pled, and Its Claims Are Meritorious 10

         (a)  Plaintiff's Federal Claims for Trademark Infringement and Unfair Competition, and its California Claim for Unfair Competition ........... 10

           (i)  Plaintiff's Protectable Ownership Interest in the CHIPPENDALES Trademarks ................................................................................. 11

           (ii) Defendants' Unauthorized Use of the CHIPPENDALES Marks Is Likely to Cause Confusion ................................................................. 11

         (b)  Plaintiff's Federal Counterfeiting Claim ................................. 17

      3.   The Damages Sought By Plaintiff Favor Default Judgment ........ 18

      4.   No Dispute Exists As To Material Facts ................................... 19

      5.   The Default Entered Against Defendants Did Not Result from Excusable Neglect ........................................................................................ 19

      6.   Defendants' Failure to Answer Makes a Decision on the Merits Impossible ..................................................................................... 20

      7.   Summary of the *Eitel* Factors ................................................. 20

   B.   Plaintiff's Requested Remedies are Warranted, Authorized, and

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
FOR DEFAULT JUDGMENT
Case No.:  2:23-cv-08630 PA-PD

i

Substantiated.........................................................................................20

**1.** Plaintiff is Entitled to Injunctive Relief......................................20

**2.** Plaintiff is Entitled to Statutory Damages ...................................21

**3.** Plaintiff Is Entitled to Attorneys' Fees And Costs ......................22

**IV.** CONCLUSION ..............................................................................23

Local Rule 11-6.2 Certificate of Compliance…………………………………24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
FOR DEFAULT JUDGMENT
Case No.:  2:23-cv-08630 PA-PD

ii

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) ............................................................. 11, 13, 15, 16

6
*Benny v. Pipes*,
7
    799 F.2d 489 (9th Cir. 1986), *opinion amended,* 807 F.2d 1514 (9th
8
    Cir. 1987) ................................................................................................................ 8

9
*Bose Corp. v. Joseph*,
10
    2015 U.S. Dist. LEXIS 112818 (C.D. Cal. Aug. 21, 2015) (Anderson,
    J.) ........................................................................................................................... 22

11
*Century 21 Real Est. Corp. v. Sandlin*,
12
    846 F.2d 1175 (9th Cir. 1988) ............................................................................. 21

13
*Chippendales USA LLC v. Jesus Jesse Banerjee*,
14
    No. 23-cv-03672 PA (PDx) (C.D. Cal. Aug. 19, 2023) ...................................... 3

15
*Clean Crawl, Inc. v. Crawl Space Cleaning Pros, Inc.*,
16
    364 F. Supp. 3d 1194 (W.D. Wash. 2019) ............................................. 14, 15, 16

17
*Craigslist, Inc. v. Naturemarket, Inc.*,
18
    694 F. Supp. 2d 1039 (N.D. Cal. 2010) ............................................................. 10

19
*Delta Forensic Eng'g, Inc. v. Delta V Biomechanics, Inc.*,
20
    402 F. Supp. 3d 902 (C.D. Cal. 2019) ................................................................ 16

21
*Derek Andrew, Inc. v. Poof Apparel Corp.*,
    528 F.3d 696 (9th Cir. 2008) ......................................................................... 21, 22

22
*DIRECTV, Inc. v. Hoa Huynh*,
23
    503 F.3d 847 (9th Cir. 2007) ..................................................................... 8, 9, 10

24
*Eitel v. McCool*,
25
    782 F.2d 1470 (9th Cir. 1986) ................................................... 8, 9, 10, 18, 19, 20

26
*Elektra Ent. Grp. Inc. v. Crawford*,
27
    226 F.R.D. 388 (C.D. Cal. 2005) ......................................................................... 9

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
FOR DEFAULT JUDGMENT
Case No.:  2:23-cv-08630 PA-PD

iii

*Entrepreneur Media, Inc. v. Smith*,
   279 F.3d 1135 (9th Cir. 2002) ................................................................. 16

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
   314 F.2d 149 (9th Cir. 1963) ................................................................... 15

*iCall, Inc. v. Reliance Commc'ns Ltd.*,
   No. C 10-02206 JW, 2010 WL 11583236 (N.D. Cal. Sept. 16, 2010) ............. 16

*Kinsley Tech. Co. v. Ya Ya Creations, Inc.*,
   No. 2:20-cv-04310-ODW, 2022 WL 3908831 (C.D. Cal. Aug. 30,
   2022) ............................................................................................... 11

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   543 U.S. 111 (2004) ............................................................................ 11

*Lahoti v. Vericheck, Inc.*,
   636 F.3d 501 (9th Cir. 2011) ................................................................. 13

*Levi Strauss & Co. v. Toyo Enter. Co.*,
   665 F. Supp. 2d 1084 (N.D. Cal. 2009) ................................................... 10

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
   658 F.3d 936 (9th Cir. 2011) ................................................................. 17

*Nestle USA, Inc. v. Gunther Grant, Inc.*,
   No. CV-13-6754 MMM, 2014 WL 12558008 (C.D. Cal. May 13,
   2014) ........................................................................................... 18, 19

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011) ............................................................... 11

*PepsiCo, Inc. v. Cal. Sec. Cans*,
   238 F. Supp. 2d 1172 (C.D. Cal. 2002) ............................................... 8, 20

*Philip Morris USA Inc. v. Castworld Prods., Inc.*,
   219 F.R.D. 494 (C.D. Cal. 2003) ...................................................... 9, 20

*Phillip Morris USA Inc. v. Shalabi*,
   352 F. Supp. 2d 1067 (C.D. Cal. 2004) ................................................... 18

*Rolex Watch U.S.A., Inc. v. LSM Watch, Inc.*,
   No. CV 21-1612-PSG, 2022 WL 3575771 (C.D. Cal. June 7, 2022) ............... 22

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
FOR DEFAULT JUDGMENT
Case No.:  2:23-cv-08630 PA-PD

iv

*Sanrio Co. v. Seoul Tower Sweets LLC*,
   2023 U.S. Dist. LEXIS 211665 (C.D. Cal. Nov. 22, 2023) .............................. 22

*Stone Creek, Inc. v. Omnia Italian Design, Inc.*,
   875 F.3d 426 (9th Cir. 2017) (abrogated on other grounds) ............................. 13

*Tech. LED Intell. Prop., LLC v. Recogi, LLC*,
   No. 18-cv-3827-JSC, 2019 WL 2716610 (N.D. Cal. June 27, 2019) ............... 19

*Viet. Reform Party v. Viet Tan – Viet. Reform Party*,
   416 F. Supp. 3d 948 (N.D. Cal. 2019) .............................................................. 10

*Wecosign, Inc. v. IFG Holdings, Inc.*,
   845 F. Supp. 2d 1072 (C.D. Cal. 2012) ....................................................... 12, 19

*YYGM S.A. v. Palco Clothing, Inc.*,
   No. CV 15-9181 PA, 2016 WL 7655755 (C.D. Cal. June 20, 2016)
   (Anderson, J.) .................................................................................................... 23

**Statutes**

15 U.S.C. § 1065 ................................................................................................ 3, 4, 5

15 U.S.C. § 1114 ....................................................................................................... 1

15 U.S.C. § 1114(1) .................................................................................................. 1

15 U.S.C. § 1115(a) ................................................................................................ 11

15 U.S.C. § 1115(b) ................................................................................................ 11

15 U.S.C. § 1116(a) ................................................................................................ 20

15 U.S.C. § 1117 ..................................................................................................... 18

15 U.S.C. § 1117(a) ................................................................................................ 22

15 U.S.C. § 1117(c) ................................................................................................ 21

15 U.S.C. § 1121 ....................................................................................................... 9

15 U.S.C. § 1125(a) .................................................................................................. 1

15 U.S.C. § 1127 ..................................................................................................... 17

28 U.S.C. § 1331 .................................................................................................. 9

28 U.S.C. § 1338(a) ............................................................................................ 9

28 U.S.C. § 1338(b) ............................................................................................ 9

Cal. Bus. & Prof. Code § 14330 ....................................................................... 21

Cal. Bus. & Prof. Code § 17200 ......................................................................... 1

TMEP § 906.4 ...................................................................................................... 8

**Rules & Regulations**

C.D. Cal. L.R. 55-1 .............................................................................................. 1

C.D. Cal. L.R. 55-3 ............................................................................................ 23

Fed. R. Civ. P. 55(a) ........................................................................................... 2

Fed. R. Civ. P. 55(b) ........................................................................................... 8

Fed. R. Civ. P. 55(b)(2) ................................................................................... 1, 9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
FOR DEFAULT JUDGMENT
Case No.:  2:23-cv-08630 PA-PD

vi

Pursuant to Fed. R. Civ. P. 55(b)(2) and C.D. Cal. L.R. 55-1, Plaintiff Chippendales USA, LLC ("Plaintiff" or "Chippendales") submits this Memorandum of Points and Authorities in support of its Motion for Default Judgment against Defendants Christian W. Banerjee, Strippendales Corporation, Strippendales LLC, and Strippendales69 LLC (collectively, "Defendants").

## I.    **INTRODUCTION**

Due to Defendants' default, entered on April 4, 2024 (Dkt. 39), the allegations in Plaintiff's Complaint (Dkt. 1) are deemed admitted. Accordingly, there is no dispute that (a) Plaintiff owns and operates the world-famous CHIPPENDALES entertainment brand that produces Broadway-style, burlesque dance shows worldwide or (b) that Defendants have been offering counterfeit and infringing goods and services under the CHIPPENDALES trademarks. Plaintiff seeks an injunction to stop Defendants from continuing this unlawful conduct.

The Clerk of Court entered Defendants' default in this action after they failed to respond to the Complaint despite being served with process. Plaintiff now brings this Motion requesting that the Court enter a default judgment against Defendants that includes: (a) a permanent injunction against Defendants' infringement and counterfeiting; and (b) an award of statutory damages and Plaintiff's attorneys' fees and costs, consistent with the relief requested in its Complaint.

## II.    **STATEMENT OF FACTS**

### A.    **Procedural Background**

On October 12, 2023, Plaintiff filed its Complaint against Defendants asserting claims for: (1) federal trademark infringement, 15 U.S.C. § 1114(1); (2) federal trademark counterfeiting, 15 U.S.C. § 1114; (3) federal unfair competition, 15 U.S.C. § 1125(a); and (4) unfair business practices under section 17200 of the California Business & Professions Code. Dkt. 1.

On January 10, 2024, this Court granted Plaintiff's motion for leave to serve

all four Defendants by alternative means. Declaration of Evan S. Nadel in Support of Plaintiff's Motion for Default Judgment ("Nadel Decl.") ¶ 6; *see* Dkt. 32. Pursuant to the January 10, 2024 Order, Chippendales completed service of process on Strippendales Corporation, Strippendales LLC, and Strippendales69 LLC (collectively, the "Corporate Defendants") via the California Secretary of State on January 23, 2024, as shown by the Proofs of Service filed on March 15, 2024. Nadel Decl. ¶ 7; *see* Dkts. 34, 34-1, 34-2, 34-3. Further pursuant to the January 10, 2024 Order, service of process on Defendant Christian Banerjee by publication was completed no later than February 22, 2024, as shown by the Proofs of Service filed on March 15, 2024. Nadel Decl. ¶ 8; *see* Dkts. 34, 34-4, 34-5, 34-6. On March 15, 2024, the Court issued a Minutes In Chambers – Court Order confirming service on all Defendants was complete. Nadel Decl. ¶ 9; *see* Dkt. 35. Defendants were required to respond to the Complaint by April 1, 2024. Nadel Decl. ¶ 10; *see* Dkt. 35. Defendants failed to file a responsive pleading or otherwise appear. Nadel Decl. ¶ 11. Therefore, pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of Court granted Plaintiff's request for default and entered a default against Defendants on April 2, 2024. Dkt. 39.

## B.    Plaintiff and Its World-Famous CHIPPENDALES Brand

Plaintiff owns and operates the world-famous CHIPPENDALES entertainment brand that produces Broadway-style, burlesque shows worldwide. Dkt. 1 (Compl.) ¶ 20. The CHIPPENDALES performance troupe was established in Los Angeles in 1979 as the world's first all-male dance act and immediately became a cultural phenomenon, which quickly led to the opening of clubs in other U.S. cities, as well as touring troupes performing in the U.S. and overseas. *Id.* ¶¶ 21, 25, 30-34. The revue's immense popularity also spawned the creation of a vast array of licensed merchandise such as clothing and annual calendars. *Id.* ¶ 26. Today, the CHIPPENDALES performance troupe entertains audiences from its flagship

location at the CHIPPENDALES Theater in Las Vegas, as well as in U.S. and international venues visited by its touring productions. *Id.* ¶ 31.

### C. Plaintiff's Rights in and Registrations for Its Famous CHIPPENDALES Trademarks

Plaintiff is the sole owner of the CHIPPENDALES business and brand. Compl. ¶¶ 54, 84, 95; *see also Chippendales USA LLC v. Jesus Jesse Banerjee*, No. 23-cv-03672 PA (PDx) (C.D. Cal. Aug. 19, 2023) (finding that Chippendales USA, LLC is the rightful and exclusive owner of common law and registered rights in the CHIPPENDALES Trademarks, as acquired through a March 30, 2000 asset purchase agreement and through Plaintiff's more than 20 years of exclusive and continuous use of the marks).

Through Plaintiff's and its predecessors in interest's extensive use of the CHIPPENDALES marks over the last 45 years, Plaintiff has developed extensive common law rights in the marks for a wide range of products and services. Compl. ¶¶ 35-38, 49-53. Plaintiff owns numerous federal registrations on the Principal Register of the United States Patent and Trademark Office ("USPTO") and foreign trademark registrations for the CHIPPENDALES mark and CHIPPENDALES design marks (Plaintiff's common law and registered marks are collectively referred to herein as the "CHIPPENDALES Trademarks"). *Id.* ¶¶ 36, 38. Plaintiff has exclusively owned all rights, title, and interest in the CHIPPENDALES Trademarks since at least 2000. *Id.* ¶ 37.

Plaintiff's relevant U.S. registrations are shown below:

| Trademark | Reg. No./ Reg. Date | Goods/Services | Date of First Use |
|---|---|---|---|
| **CHIPPENDALES**<br><br>Registration has become incontestable pursuant to 15 | 1197438<br><br>6/8/82 | 41: Entertainment services, namely, male dance exhibitions. | 12/1/78 |

| U.S.C. § 1065 | | | |
|---|---|---|---|
| **CHIPPENDALES**<br><br>Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 1330855<br><br>4/16/85 | 16: Calenders, playing cards, posters. | 7/3/81 |
| **CHIPPENDALES**<br><br>Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 2802430<br><br>1/6/04 | 9: Series of DVDs featuring music and male nightclub entertainers. | 1987 |
| **CHIPPENDALES**<br><br>Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 3127649<br><br>8/8/06 | 16: Party supplies, namely, paper napkins; pin-ups, namely, flat, cardboard poster-like cutouts of men with adjustable hands, arms, and legs.<br><br>25: Clothing, namely headwear, hats, tank tops, t-shirts, long sleeve t-shirts, sweatshirts, shorts, nightshirts and undergarments.<br><br>41: Entertainment services, namely, live theatrical and musical floor shows provided at night clubs and theaters.<br><br>45: Providing online electronic greeting cards via the internet. | 16: 7/31/01<br><br>25: 2/7/00<br><br>41: 7/3/81<br><br>45: 2/19/06 |
| **CHIPPENDALES**<br><br>Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 3690717<br><br>9/29/09 | 43: Waiter services for serving drink; bar services. | 2/1/05 |
| **CHIPPENDALES** | 3981590 | 10: Electric massage | 10/1/10 |

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION DEFAULT JUDGMENT<br>Case No.:  2:23-cv-08630 PA-PD

- 4 -

| | | appliances, namely, electric vibrating massager. | |
|---|---|---|---|
| Registration has become incontestable pursuant to 15 U.S.C. § 1065 | 6/21/11 | | |
| **CHIPPENDALES & Bow Tie Design**<br><br>☒ CHIPPENDALES | 5203733<br><br>5/16/17 | 10: Electric massage appliances, namely, electric vibrating massager.<br><br>16: Calendars and paper goods, namely, pin-ups, namely, flat, cardboard, poster-like cutouts of men with adjustable hands, arms and legs.<br><br>21: Barware, namely, shotglasses.<br><br>25: Clothing, namely, headwear, hats, tank tops; t-shirts, long sleeve t-shirts, sweatshirts, shorts, nightshirts and undergarments.<br><br>41: Entertainment services, namely, live theatrical and musical floor shows provided at night clubs and theaters. | 10: 10/15<br><br>16: 10/15<br><br>21: 10/15<br><br>25: 10/15<br><br>41: 9/15 |

Compl. ¶ 38 & Exhibit A.

Plaintiff's Reg. No. 5203733, for its CHIPPENDALES & Bow Tie Design mark, constitutes *prima facie* evidence of Plaintiff's ownership of the mark and exclusive rights to use the mark in connection with the goods and services recited in the registration. *Id.* ¶ 41. Moreover, all of Plaintiff's other U.S. registrations for its CHIPPENDALES Trademarks listed above have become incontestable, and therefore constitute conclusive evidence of Plaintiff's ownership of and exclusive rights to use the CHIPPENDALES Trademarks in connection with the goods and

services recited in those registrations, namely, Reg. Nos. 1197438; 1330855; 2802430; 3127649; 3690717; and 3981590. *Id.* ¶ 42.

Additionally, as early as July 2001, Plaintiff adopted and used the CHIPPENDALES & Design trademark shown below:



*Id.* ¶ 43. Plaintiff previously registered this design with the USPTO in Classes 16, 25, 38, and 41, as memorialized in U.S. Reg. Nos 3212353, 3191552, 3999348, 3191558, and 3191557. *Id.* ¶ 44. Although these registrations have not been renewed, a significant number of consumers in California and throughout the U.S. immediately associate the design with Plaintiff, and the design retains significant residual goodwill among those consumers. *Id.* ¶ 45. Plaintiff also exclusively owns all rights, title, and interest in the domain names *Chippendales.com*; *Chippendales.org*; *Chippendale.net*; and *Chippendale.org*. *Id.* ¶ 50.

Since acquiring the CHIPPENDALES business in 2000, Plaintiff has continuously and exclusively used the CHIPPENDALES Trademarks in California and the United States. *Id.* ¶¶ 51, 52, 54. Through the vast promotion and investment in the CHIPPENDALES brand, combined with extensive publicity and sales under the CHIPPENDALES Trademarks, Plaintiff has acquired enormous goodwill in the marks. *Id.* ¶¶ 48-49. Therefore, independently of the rights Plaintiff acquired in 2000, Plaintiff owns the CHIPPENDALES Trademarks through continuous, exclusive use of them for over twenty years. The CHIPPENDALES Trademarks are commercially strong, inherently distinctive, arbitrary, and fanciful, and are entitled to the broadest scope of protection. *Id.* ¶¶ 46-47.

**D.    Defendants' Infringement of the CHIPPENDALES Trademarks**

Defendants have no rights in the CHIPPENDALES Trademarks. Compl. ¶ 55. Nevertheless, with actual and constructive knowledge of Plaintiff's rights,

Defendants have used counterfeits of Plaintiff's federally registered CHIPPENDALES Trademarks, and marks that are substantially similar to those marks, to advertise and offer for sale their own goods and services. *Id.* ¶¶ 3, 5, 56, 58-60, 68-70, 91, 100, 106.

For example, Defendants have advertised public performances of all-male revues displaying spurious marks that are identical with, or substantially indistinguishable from, Plaintiff's federally-registered CHIPPENDALES Trademarks. *Id.* ¶¶ 56, 58-59. In addition to using the CHIPPENDALES Trademarks to sell tickets for public performances of all-male revues, Defendants offer other entertainment services in connection with bachelorette parties and private parties ("Defendants' Services")—services identical to services Plaintiff offers under its CHIPPENDALES Trademarks. *Compare id.* ¶¶ 35-54 (Plaintiff's services), *with id.* ¶¶ 55-74 (Defendants' Services). Defendants' Services are targeted towards the same types of consumers to whom Plaintiff markets its CHIPPENDALES services, including women looking for an all-male dance revue. *Id.* ¶ 57. Defendants' use of the CHIPPENDALES Trademarks and confusingly similar imitations thereof in connection with Defendants' all-male revues and other entertainment services is not authorized by Plaintiff. *Id.* ¶ 58.

Defendants have offered and advertised Defendants' Services under the marks CHIPPENDALES, SON OF CHIPPENDALES, and STRIPPENDALES (the "Infringing Marks"). *Id.* ¶ 59. Defendants have also advertised merchandise bearing the Infringing Marks on Instagram, including tanks, hoodies, and hats. *Id.* ¶¶ 66-67.

Defendants have also registered domain names that incorporate confusingly similar imitations of the CHIPPENDALES Trademarks, including *strippendales.com* and *thestrippendales.com*. *Id.* ¶ 71. Defendants prominently display the Infringing Marks at the top of the homepage of the *strippendales.com* website, which offers all-male revue and other entertainment services. *Id.* ¶¶ 72-73.

In designing the website at *strippendales.com*, Defendants wantonly, maliciously, and willfully copied the color scheme, tagline, layout, and design features of Plaintiff's website. *Id.* ¶¶ 72-74.

Such use is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities among consumers in California and throughout the United States. *Id.* ¶¶ 59, 89, 99, 104, 112. Defendants' use has already resulted in actual confusion and harm to Plaintiff's reputation. *Id.* ¶¶ 75-76. Consumers have confused Defendants' services with Plaintiff's. *Id.* ¶ 76. Even worse, numerous consumers have reported dissatisfaction with Defendants' Services. *Id.* ¶¶ 77-82.

The harm caused by Defendants' willful conduct is exacerbated by Defendants' repeated use of the trademark registration symbol "®" in connection with the STRIPPENDALES mark, despite the fact that the STRIPPENDALES mark is not registered with the USPTO. *Id.* ¶¶ 61, 63-64. The USPTO's Trademark Manual of Examining Procedure § 906.4 provides: "Improper use of the federal registration symbol, ®, that is deliberate and intends to deceive or mislead the public or the USPTO is fraud." *Id.* ¶ 62.

## III.  <u>ARGUMENT</u>

Upon a defendant's default, all well-pleaded allegations set forth in the complaint are deemed admitted. *See DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007); *Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986) (upholding a default judgment because well-pleaded factual allegations must be taken as true given a party's failure to answer), *opinion amended,* 807 F.2d 1514 (9th Cir. 1987).

### A.    The *Eitel* <u>Factors Favor Entry of Default Judgment</u>

Pursuant to Federal Rule of Civil Procedure 55(b), a court may enter default judgment following entry of default. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.

Supp. 2d 1172, 1174 (C.D. Cal. 2002).[1] A defaulting defendant is deemed to have admitted all well-pleaded factual allegations in the complaint related to liability. *DIRECTV, Inc.*, 503 F.3d at 851.

Rule 55(b)(2) grants a court discretion to enter a judgment by default against any party that fails to plead or otherwise defend as required by the rules. *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). The Ninth Circuit has identified seven factors that courts should consider in deciding whether to enter default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of
> plaintiff's substantive claim, (3) the sufficiency of the complaint,
> (4) the sum of money at stake in the action; (5) the possibility of a
> dispute concerning material facts; (6) whether the default was due
> to excusable neglect, and (7) the strong policy underlying the
> Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *Elektra Ent. Grp. Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005) (citation omitted). As discussed below, the *Eitel* factors strongly favor entry of default judgment in favor of Plaintiff.

### 1.    Plaintiff Will Be Prejudiced Absent a Default Judgment

The prejudice factor favors entry of default judgment where, as here, the absence of a default judgment would leave the plaintiff without another recourse for

---

[1]    This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) & 1338(b), and 15 U.S.C. § 1121. Defendants are subject to personal jurisdiction in this District because they reside in and conduct business within this District, and have committed acts of trademark infringement, counterfeiting, and unfair competition within the state of California and this District.

recovery. *See Levi Strauss & Co. v. Toyo Enter. Co.*, 665 F. Supp. 2d 1084, 1095 (N.D. Cal. 2009) (stating first *Eitel* factor favored default judgment where plaintiff otherwise would be "unable to prevent continued infringement"). Despite being served with the Summons and Complaint (*see* Dkts. 34, 35), as well as being served with Plaintiff's request to the Clerk of Court to enter default against Defendants (*see* Dkt. 38) and the actual entry of default (*see* Dkt. 39), Defendants have failed to respond or otherwise appear in this action. Nevertheless, Defendants continue to make unauthorized uses of Plaintiff's marks. Nadel Decl. ¶ 20. Accordingly, Plaintiff has no other recourse to stop Defendants' continued infringement, and the first *Eitel* factor weighs strongly in favor of a default judgment. *See Viet. Reform Party v. Viet Tan – Viet. Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (finding plaintiff would be prejudiced absent a default judgment because it would have no other recourse to prevent infringement).

## 2.    Plaintiff's Complaint is Sufficiently Pled, and Its Claims Are Meritorious

"Under the second and third *Eitel* factors the Court must examine whether the Plaintiff has pl[ed] facts sufficient to establish and succeed upon its claims." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1055 (N.D. Cal. 2010). Plaintiff has pled facts—deemed admitted by virtue of Defendants' default— sufficient to establish and succeed upon each of its four causes of action. *See DIRECTV, Inc.*, 503 F.3d at 851 ("[I]n defaulting, defendants are deemed to have admitted all well-pleaded factual allegations contained in the complaints.").

### (a)    *Plaintiff's Federal Claims for Trademark Infringement and Unfair Competition, and its California Claim for Unfair Competition*

"[C]laims for trademark infringement [and] unfair competition under federal law, and unfair competition under California law are all 'subject to the same legal

standards.'" *Kinsley Tech. Co. v. Ya Ya Creations, Inc.*, No. 2:20-cv-04310-ODW (KSx), 2022 WL 3908831, at *3 (C.D. Cal. Aug. 30, 2022) (citation omitted). To succeed on these claims, a plaintiff must prove: "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (citation omitted).

(i)     **Plaintiff's Protectable Ownership Interest in the CHIPPENDALES Trademarks**

Plaintiff has adequately alleged a valid ownership interest in the CHIPPENDALES Trademarks. Plaintiff owns federal registrations for the CHIPPENDALES Trademarks (Compl. ¶¶ 36-38), which constitute "prima facie evidence of the validity" of those marks and Plaintiff's ownership of them. *Kinsley Tech. Co.*, 2022 WL 3908831, at *4 (quoting 15 U.S.C. § 1115(a)). Further, Plaintiff's incontestable registrations[2] for the majority of the CHIPPENDALES Trademarks constitute "conclusive evidence" of the validity of those marks and of Plaintiff's ownership of them. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004) (quoting 15 U.S.C. § 1115(b)).

(ii)     **Defendants' Unauthorized Use of the CHIPPENDALES Marks Is Likely to Cause Confusion**

Plaintiff has adequately alleged that Defendants' use of the CHIPPENDALES Trademarks and confusingly similar imitations of them is likely to cause consumer confusion, and in fact has already caused actual confusion. Compl. ¶¶ 55-82 (showing repeated use of CHIPPENDALES mark and confusingly similar SON OF CHIPPENDALES and STRIPPENDALES marks); *id.* ¶¶ 75-76 (showing actual confusion). The Ninth Circuit analyzes likelihood of confusion using the *Sleekcraft*

---

[2] U.S. Reg. Nos. 1197438; 1330855; 2802430; 3127649; 3690717; and 3981590.

factors, each of which is analyzed below and weighs in favor of a likelihood of confusion or is neutral. *See Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1079 (C.D. Cal. 2012).

**Similarity of the Marks:** Plaintiff's marks consist of the CHIPPENDALES word mark and the CHIPPENDALES & Bow Tie Design. *See* Comp. ¶ 38. Defendants' infringing marks include CHIPPENDALES, SON OF CHIPPENDALES, and STRIPPENDALES. *Id.* ¶¶ 59, 63-74, 79. Plaintiff's CHIPPENDALES word mark and Defendants' infringing CHIPPENDALES word mark are identical, weighing strongly in favor of a likelihood of confusion. Plaintiffs' CHIPPENDALES word mark and Defendants' infringing STRIPPENDALES word mark are highly similar because Defendants simply took Plaintiff's commercially and conceptually strong CHIPPENDALES mark and replaced only the first two letters (from "CH-" to "STR- ") in order to connote the services Plaintiff offers under the mark, which serves to further confuse consumers rather than dispel confusion, thus weighing strongly in favor of a likelihood of confusion. Plaintiff's CHIPPENDALES & Bow Tie Design and Defendants' infringing bow tie mark are both comprised of a bow tie design made of two inward-pointing triangles—and Defendants' bow tie mark is identical to a bow tie mark previously used by Plaintiff (*id.* ¶ 43)—which weighs strongly in favor of a likelihood of confusion.

**Relatedness of the Two Companies' Services:** Defendants use each of the Infringing Marks to advertise and sell tickets to public performances of all-male revues and offer other entertainment services in connection with bachelorette parties and private parties—all services identical to Plaintiff's legitimate CHIPPENDALES services. *Compare id.* ¶¶ 35-54 (Plaintiff's services), *with id.* ¶¶ 55-74 (Defendants' Services). Defendants also use the Infringing Marks to advertise and offer for sale hats, tanks, and hoodies (*id.* ¶ 67), which are offered by Plaintiff under its

CHIPPENDALES Trademarks. *Id.* ¶¶ 38, 51, 52. That both parties offer identical goods and services under the marks weighs strongly in favor of a likelihood of confusion.

**Marketing Channels Used:** Defendants advertise online and offer their goods and services at night clubs. *Id.* ¶¶ 63-65, 67, 70-74; Nadel Decl. ¶¶ 21-24, Exs. 2-5. Plaintiff also advertises online and offer its goods and services at similar night club venues. *Id.* ¶¶ 25, 31, 50, 52. Because Plaintiff advertises and offers its goods and services under its CHIPPENDALES Trademarks via the same channels of trade as Defendants, this favor weighs strongly in favor of a likelihood of confusion.

**Strength of Plaintiff's Mark:** A mark's strength is evaluated based on two components: "the mark's inherent distinctiveness (i.e., its conceptual strength)" and "the mark's recognition in the market (i.e., its commercial strength)." *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 432 (9th Cir. 2017) (abrogated on other grounds) (citing *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 508 (9th Cir. 2011)). Plaintiff's CHIPPENDALES Trademarks are both commercially and conceptually strong.

The CHIPPENDALES Trademarks are each inherently distinctive, arbitrary marks because they do not describe the goods or services offered under them, and they are entitled to the broadest scope of protection. *Id.* ¶ 46. For conceptual strength, "[a] strong mark is inherently distinctive, for example, [if it is] an arbitrary or fanciful mark; it will be afforded the widest ambit of protection from infringing uses." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979). In contrast, Defendants' STRIPPENDALES mark is conceptually weaker relative to Plaintiff's CHIPPENDALES mark, because it uses the formative word "strip" to describe the services they offer. *See* Compl. ¶¶ 63-67.

The CHIPPENDALES Trademarks are also commercially strong. Through

the vast promotion and investment in the CHIPPENDALES brand—combined with extensive publicity and sales—Plaintiff has acquired enormous goodwill in its CHIPPENDALES Trademarks. *Id.* ¶¶ 47, 49. For the last 45 years, Plaintiff and its predecessors in interest have invested enormous amounts of time, money, and effort into advertising and promoting the products and services sold under the CHIPPENDALES Trademarks in California and throughout the United States. *Id.* ¶ 48; *Clean Crawl, Inc. v. Crawl Space Cleaning Pros, Inc.*, 364 F. Supp. 3d 1194, 1207 (W.D. Wash. 2019) ("Courts assess a mark's commercial strength by considering its actual marketplace recognition, and, on one hand, may consider evidence of substantial advertising expenditures, substantial sales, and widely distributed advertising campaigns . . . ."). The CHIPPENDALES Trademarks identify one of the most recognized brand names in the world, with all of the CHIPPENDALES Trademarks receiving unsolicited media attention from myriad sources, including the *Los Angeles Times*, *Entertainment Tonight*, and countless other traditional and online media outlets over the span of its existence, including at present. Compl. ¶¶ 20, 24. The CHIPPENDALES revue has become, and remains, a household name, copiously referenced in pop culture across media, including in feature films, televisions shows, and famously on *Saturday Night Live*—which alone has approximately 8.6 million views on YouTube at the time of the Complaint's filing. *Id.* ¶¶ 27-29. The CHIPPENDALES revue continues to entertain sold-out audiences from the CHIPPENDALES Theatre inside the Rio Hotel & Casino in Las Vegas, as well as at U.S. and international venues visited by its touring productions, and CHIPPENDALES productions are seen by over two million people worldwide annually. *Id.* ¶¶ 31, 32. In contrast, Defendants' marks are conceptually weak. Defendants' shows are advertised to infrequently occur and take place in limited locations. *See id.* ¶¶ 63-70.

That Plaintiff's CHIPPENDALES Trademarks are commercially and

conceptually stronger than Defendants' marks weighs in favor of a likelihood of confusion.

**Defendant's Intent in Selecting Its Mark:** "While plaintiffs are not obligated to prove wrongful intent to support a finding of trademark infringement, 'when the evidence does show or require the inference that another's name was adopted deliberately with a view to obtain some advantage from the good will, good name, and good trade which another has built up, then the inference of the likelihood of confusion is readily drawn.'" *Clean Crawl*, 364 F. Supp. 3d at 1209 (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 157-58 (9th Cir. 1963)). Here, Defendants plainly are aware of Plaintiff and its rights in its marks, as Defendant Christian Banerjee—who owns and/or controls the remaining three Corporate Defendants—references Plaintiff's business in his social media posts. *E.g.*, Compl. ¶ 70 (image); *Sleekcraft,* 599 F.2d at 354 ("When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." (citations omitted)). Moreover, Defendants have used confusingly similar imitations of the CHIPPENDALES Trademarks to promote their services on a website that "copied the color scheme, tagline, layout, and design features of Plaintiff's website," evidencing an intent to associate itself with Plaintiffs and confuse consumers. *Id.* ¶¶ 72-74.

Using Plaintiff's marks and colorable imitations of those marks to advertise identical goods and services with extensive prior knowledge of Plaintiff's marks—on a website that also copies Plaintiff's website's design—confirms Defendants' willful, knowing, and deliberate intent to deceive or mislead the public; therefore, this factor weighs in favor of a likelihood of confusion.

**Evidence of Actual Confusion:** Actual confusion has already occurred in the marketplace. For example, one consumer wrote in a January 10, 2023 post on

Facebook that her "favorite dancers Chippendales . . . are now called Strippendales out of California !!! Times have certainly changed !!!" *Id.* ¶ 76; Nadel Decl. ¶¶ 22-23, Ex. 6. *Delta Forensic Eng'g, Inc. v. Delta V Biomechanics, Inc.*, 402 F. Supp. 3d 902, 910 (C.D. Cal. 2019) ("Evidence of actual confusion is strong evidence that future confusion is likely . . . .") (quoting *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1150 (9th Cir. 2002)). This factor thus weights strongly in favor of a likelihood of confusion, as actual confusion is already occurring.

**Likelihood of Expansion into Other Markets:** "This factor is essentially irrelevant where the conflicting marks are already being used in the same market for nearly identical goods." *iCall, Inc. v. Reliance Commc'ns Ltd.*, No. C 10-02206 JW, 2010 WL 11583236, at *11 (N.D. Cal. Sept. 16, 2010) (holding this factor neutral where goods already are nearly identical). As discussed above, the goods and services the parties offer under their marks are identical. Thus, this factor is neutral.

**Degree of Care Likely to Be Exercised by Purchasers:** "Courts note that consumers exercise less care with inexpensive products, making confusion more likely, and greater care when purchasing expensive goods making confusion less likely." *Clean Crawl*, 364 F. Supp. 3d 1194, 1209-10 (internal citations omitted). Here, the relatively low price points indicate consumer confusion is more likely because consumers may take less care in making that decision. *Id.*; *see, e.g.*, Compl. ¶ 64 ($25-30 tickets for Defendants' services). This factor thus weighs in favor of a likelihood of confusion.

Considering all the *Sleekcraft* factors weigh in favor of a likelihood of confusion, apart from one neutral factor, Defendants' conduct "has caused" and "will continue to cause, a likelihood of confusion and deception of members of the trade and public." *Id.* ¶ 105; *see also id.* ¶¶ 59, 89, 99, 104, 112. Accordingly, Plaintiff has pled facts sufficient to establish and succeed upon its federal claims for trademark infringement and unfair competition, and its California claim for unfair

1  competition.

2  ### *(b)    Plaintiff's Federal Counterfeiting Claim*

3         A federal counterfeiting claim is subject to the same standards as a federal

4  trademark infringement claim, except that the defendant's mark must "be (1) a non-

5  genuine mark identical[3] to the registered, genuine mark of another, where (2) the

6  genuine mark was registered for use on the same goods to which the infringer

7  applied the mark." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936,

8  946 (9th Cir. 2011).

9         Here, Plaintiff owns federal registrations for CHIPPENDALES in connection

10 with "[e]ntertainment services, namely, male dance exhibitions" (U.S. Reg. No.

11 1197438) and "[e]ntertainment services, namely, live theatrical and musical floor

12 shows provided at night clubs and theaters" (U.S. Reg. No. 3127649). Compl. ¶ 38;

13 Dkt. 1-1 at 2, 5. Plaintiff also owns a federal registration for CHIPPENDALES in

14 connection with "hats, tank tops[,] . . . [and] sweatshirts" (U.S. Reg. No. 3127649).

15 Additionally, Plaintiff owns a federal registration for the CHIPPENDALES & Bow

16 Tie Design mark in connection with "hats, tank tops[,] . . . [and] sweatshirts" and in

17 connection with "[e]ntertainment services, namely, live theatrical and musical floor

18 shows provided at night clubs and theaters" (U.S. Reg. No. 5203733). Compl. ¶ 38;

19 Dkt. 1-1 at 8. Defendants have used marks that are identical with that mark in

20 connection with the same goods and services described in Plaintiff's federal

21 registrations for those marks, including entertainment services in the nature of male

22 dance revues, hats, tank tops, and sweatshirts/hoodies. *E.g.*, Compl. ¶ 67

23 (Defendants' Instagram post confirming "[Defendants] will be performing . . .

24 hitting you with the latest and greatest male stripper," and that "merchandise will be

25 sold[:] pro club Strippendales tanks blk/pink white/blk blk/gold $30[;] hats snap

26

27 [3] The defendant's mark may alternatively be "substantially indistinguishable from"
   the plaintiff's registered mark. 15 U.S.C. § 1127.

28

back blk/pink blk/gold $40[;] and pro club hoodies $75 blk/pink logo on front and the butt"); *id.* ¶¶ 56, 66, 98; Nadel Decl. ¶ 19, Ex. 2.

Accordingly, Plaintiff has pled facts sufficient to establish and succeed upon its federal counterfeiting claim.[4] *See, e.g.*, *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) (finding in cases involving counterfeit marks, "it is unnecessary to perform the step-by-step examination . . . because counterfeit marks are inherently confusing.") (alteration in original) (citation omitted).

### 3.   The Damages Sought By Plaintiff Favor Default Judgment

The fourth *Eitel* factor involves consideration of the amount of money at stake. *Eitel*, 782 F.2d at 1471-72. As discussed in more detail below (*see infra* Section III.B.2), due to Defendants' failure to appear in this action, it is impossible to determine Defendants' profits or Plaintiff's actual damages, and thus Plaintiff seeks an award of statutory damages for Defendants' counterfeiting. Plaintiff, however, is not seeking anywhere near the maximum amount of statutory damages to which it is entitled under the Lanham Act.

The Lanham Act authorizes statutory damages of up to $2,000,000 *per* counterfeit mark *per* type of goods or services sold, 15 U.S.C. § 1117, meaning Plaintiff could potentially recover millions of dollars in statutory damages. But Plaintiff is only seeking $25,000 per mark per good, for a total of $50,000. *See infra* Section III.B.2. Because this amount falls far below the statutory maximum set by

---

[4] Moreover, in support of its request for statutory damages, Plaintiff has filed with its Motion detailed website evidence showing Defendants' multiple unauthorized uses of Plaintiff's CHIPPENDALES marks, which confirm the uncontested allegations in Plaintiff's Complaint. Nadel Decl. ¶¶ 18-20, Ex. 2-4; *see Nestle USA, Inc. v. Gunther Grant, Inc.*, No. CV-13-6754 MMM (ASx), 2014 WL 12558008, at *13 (C.D. Cal. May 13, 2014) (granting default judgment; in addition to the allegations in complaint being taken as true due to entry of default, plaintiff's provision of website screenshots and images of defendant's infringement negated possibility that material facts were disputed).

1  Congress, this *Eitel* factor favors the entry of default judgment. *See Nestle USA,*
2  *Inc.*, 2014 WL 12558008, at *12 (holding fourth *Eitel* factor "d[id] not weigh
3  against the entry of default judgment" even where plaintiff sought $2,100,000 in
4  statutory damages—the maximum allowed); *see also Tech. LED Intell. Prop., LLC*
5  *v. Recogi, LLC*, No. 18-cv-3827-JSC, 2019 WL 2716610, at *4 (N.D. Cal. June 27,
6  2019) ("[D]efault judgment [is] appropriate where [the amount] is 'tailored to [the
7  defendants'] specific misconduct.'") (citation omitted).

8  ### 4.   No Dispute Exists As To Material Facts

9       The factual allegations in the Complaint, which must be accepted as true, also
10  include "screenshots and images that depict defendants' use of [Plaintiff's] marks,"
11  and Plaintiff has provided proof of "service on defendants of the summons and
12  complaint in this action." *See Nestle USA, Inc.*, 2014 WL 12558008, at *12.
13  "[T]hus, there is no dispute that defendants infringed," and "[t]his factor, therefore,
14  also favors the entry of default judgment against defendants." *See id.*

15  ### 5.   The Default Entered Against Defendants Did Not Result
16  ###        from Excusable Neglect

17       The sixth *Eitel* factor, whether the default "may have been the product of
18  excusable neglect," favors default judgment "when the defendant has been properly
19  served or the plaintiff demonstrates that the defendant is aware of the lawsuit."
20  *Wecosign*, 845 F. Supp. 2d at 1082 (citation omitted).

21       Timely service was properly effected on all Defendants. The Corporate
22  Defendants were served via the California Secretary of State, and Defendant
23  Christian Banerjee was served by publication in three separate newspapers of
24  general circulation in accordance with this Court's order permitting such means of
25  alternative service. Nadel Decl. ¶¶ 6, 8; *see also* Dkts. 32, 34, 35. Moreover, on
26  November 7, 2023, Plaintiff's counsel emailed Defendants copies of the summons
27  and complaint to an email address Defendant Christian Banerjee had previously

28

1   used to communicate with Plaintiff's counsel, without receiving any bounceback or
2   other indication the email address had been deactivated. Dkt. 31-1 at 3 & Ex. 18.
3   Because Defendants received notice of this lawsuit through several different
4   methods, Defendants were aware of the lawsuit, and their failure to respond was not
5   due to excusable neglect.

6           **6.      Defendants' Failure to Answer Makes a Decision on the**
7                     **Merits Impossible**

8           The final *Eitel* factor balances the entry of default judgment against the
9   preference for deciding cases on the merits. *Eitel*, 782 F.2d at 1472. Because
10  Defendants' failure to answer makes a decision on the merits impractical, if not
11  impossible, *see Philip Morris USA Inc.*, 219 F.R.D. at 501, entry of default is
12  warranted here. *See PepsiCo., Inc.*, 238 F. Supp. 2d at 1177.

13          **7.      Summary of the *Eitel* Factors**

14          Each of the *Eitel* factors favors grating Plaintiff's motion for default judgment
15  against Defendants. Accordingly, a default judgment is proper.

16          **B.      <u>Plaintiff's Requested Remedies are Warranted, Authorized, and</u>**
17                    **<u>Substantiated</u>**

18          **1.      Plaintiff is Entitled to Injunctive Relief**

19          Plaintiff seeks to permanently enjoin Defendants from counterfeiting and
20  infringing its CHIPPENDALES Trademarks. *See* Proposed Judgment and
21  Permanent Injunction, filed concurrently. The requested injunction, which is
22  consistent with what Plaintiff prayed for in its Complaint (*see* Compl. ¶¶ 6, 90, 93,
23  102, 107, 113) is both authorized by the relevant statutes and warranted under the
24  facts of this case.

25          The Lanham Act expressly authorizes injunctive relief where a defendant
26  engages in trademark infringement, counterfeiting, or unfair competition. *See*
27  § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and

28

1   unfair competition cases, since there is no adequate remedy at law for the injury

2   caused by a defendant's continuing infringement." *Century 21 Real Est. Corp. v.*

3   *Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). Plaintiff is also entitled to an

4   injunction based on Defendants' conduct constituting unfair trade practices under

5   California law. *See* Cal. Bus. & Prof. Code § 14330.

6          As discussed above, Plaintiff has shown that it is entitled to judgment on each

7   of its claims. There is no dispute that Plaintiff will continue to suffer irreparable

8   harm if a permanent injunction does not issue. The undisputed facts establish that

9   Plaintiff has suffered, and will continue to suffer, irreparable harm by virtue of

10  Defendants' intentional acts of infringement, counterfeiting, and unfair competition

11  unless Defendants are enjoined. *See* Compl. ¶¶ 4, 75, 90, 93, 102, 107, 113.

12                    **2.      Plaintiff is Entitled to Statutory Damages**

13         The Lanham Act provides statutory damages for the use of counterfeit marks

14  in the amount of $1,000 to $200,000 per counterfeit mark, per type of goods or

15  services—an amount which may be increased in cases of willful counterfeiting to

16  $2,000,000 per mark, per type of goods or services. *See* 15 U.S.C. § 1117(c)). Here,

17  "Defendants' conduct has been wanton, malicious, willful, and intended to cause

18  confusion among consumers and to capitalize on Plaintiff's goodwill in the

19  CHIPPENDALES Trademarks" Compl. ¶¶ 60, 91, 100. At default judgment, "all

20  factual allegations in the complaint are deemed true, including" allegations of

21  "willful infringement." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696,

22  702 (9th Cir. 2008).

23         As discussed in Section III.A.2.b. *supra*, Defendants willfully used at least

24  two counterfeit marks, each in connection with at least two goods and services: (i)

25  entertainment services in the nature of male dance revues, and (ii) clothing, namely,

26  hats, tanks, and sweatshirts/hoodies. Plaintiff therefore is entitled to up to

27  $8,000,000 in statutory damages. But here, Plaintiff requests an award of $25,000

28

per mark, for a total of **$50,000** in statutory damages. *Infra* III.A.2.b (stating extent of counterfeiting across various marks, registrations, and goods/services, including the two marks on which this statutory damages award is based: (i) the CHIPPENDALES word mark (U.S. Reg. Nos. 1197438, 3127649, and 3127649), and (ii) the CHIPPENDALES & Bow Tie Design mark (U.S. Reg. No. 5203733)). This amount bears a plausible relationship to Plaintiff's actual damages—including the diminution in the value of the CHIPPENDALES Trademarks and harm to Plaintiff's reputation—and is sufficient to deter future infringement. *See Rolex Watch U.S.A., Inc. v. LSM Watch, Inc.*, No. CV 21-1612-PSG (SKx), 2022 WL 3575771, at *7 (C.D. Cal. June 7, 2022) ("$1 million per counterfeited mark is necessary to deter Defendants and others from counterfeiting Plaintiff's registered trademarks, even if Defendants' actual ill-gotten gains were likely less than half of that sum"). Plaintiff's requested amount of statutory damages is extremely reasonable in light of Defendants' refusal to participate in this case and the statutory damages available for willful counterfeiting. *See, e.g.*, *Sanrio Co. v. Seoul Tower Sweets LLC*, 2023 U.S. Dist. LEXIS 211665, *19 (C.D. Cal. Nov. 22, 2023) (awarding $300,000, or $100,000 for each of the three infringed trademarks); *Bose Corp. v. Joseph*, 2015 U.S. Dist. LEXIS 112818, *6 (C.D. Cal. Aug. 21, 2015) (Anderson, J.) (awarding $25,000 per infringed trademark).

### 3.    Plaintiff Is Entitled to Attorneys' Fees And Costs

Finally, Plaintiff is entitled to an award of its attorneys' fees and costs it expended in pursuit of this action. The Lanham Act authorizes recovery of "costs" in all cases, and recovery of attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). The Ninth Circuit has twice held that an allegation of willful infringement "deemed true" through default "sufficiently establishes [a plaintiff's] entitlement to attorneys' fees under the Lanham Act." *Derek Andrew, Inc.*, 528 F.3d at 702. As discussed above, Defendants' conduct was willful, deliberate, and

malicious, making this an exceptional case under the Lanham Act. *See YYGM S.A. v. Palco Clothing, Inc.*, No. CV 15-9181 PA (JRPx), 2016 WL 7655755, at *3 (C.D. Cal. June 20, 2016) (Anderson, J.) ("[G]iven the Complaint's well-pleaded allegations of wilful infringement, this is an exceptional case under the Lanham Act.").

Accordingly, Defendants should be required to pay the attorneys' fees and costs expended by Plaintiff in pursing this action to redress Defendants' willful infringement. Pursuant to L.R. 55-3, and because Plaintiff seeks $50,000 in statutory damages, Plaintiff seeks "$1200 plus 6% of [$40,000]," or **$3,600** in attorney's fees. Plaintiff is prepared to submit detailed documents showing that Plaintiff has incurred and paid significantly more than $3,600 in fees.

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Default Judgment, permanently enjoin Defendants, and award Plaintiff statutory damages, attorneys' fees, and costs, as detailed in the Proposed Judgment and Permanent Injunction submitted with this Motion.

Dated:  May 2, 2024                       Respectfully submitted,

                                          KILPATRICK TOWNSEND & STOCKTON LLP


                                          By:   /s/ *Evan S. Nadel*
                                                Evan S. Nadel
                                                Kollin J. Zimmermann
                                                Marc A. Lieberstein (Admitted *pro hac vice*)
                                                Kristin M. Adams (Admitted *pro hac vice*)

                                                *Attorneys for Plaintiff*
                                                *CHIPPENDALES USA, LLC*

1

## Local Rule 11-6.2 Certificate of Compliance

2

The undersigned, counsel of record for Plaintiff Chippendales USA, LLC,

3

certifies that this brief contains 6,269 words, which complies with the word limit

4

of L.R. 11-6.1.

5

6

Dated: May 2, 2024                    Respectfully submitted,

7

KILPATRICK TOWNSEND & STOCKTON LLP

8

9

By:    /s/ *Evan S. Nadel*

10

Evan S. Nadel
Kollin J. Zimmermann
Marc A. Lieberstein (Admitted *pro hac vice*)
Kristin M. Adams (Admitted *pro hac vice*)

11

12

*Attorneys for Plaintiff*
*Chippendales USA, LLC*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28