KIRSTEN A. HART (SBN 258433)
kirsten.hart@afslaw.com
OSCAR A. FIGUEROA (SBN 313238)
oscar.figueroa@afslaw.com
**ARENTFOX SCHIFF LLP**
555 S. Flower St., 43rd Floor
Los Angeles, CA  90071
Tel: 213.629.7400/Fax: 213.629.7401

ROSS Q. PANKO (*Pro Hac Vice*)
ross.panko@afslaw.com
**ARENTFOX SCHIFF LLP**
1717 K Street NW
Washington, D.C. 20006
Tel: 202.857.6000/Fax: 202.857.6395

Attorneys for Defendants
CHRIS BANE (*erroneously sued as* "CHRISTIAN W. BANERJEE"), STRIPPENDALES CORPORATION, STRIPPENDALES LLC, AND STRIPPENDALES69 LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHIPPENDALES USA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTIAN W. BANERJEE, STRIPPENDALES CORPORATION, STRIPPENDALES LLC, and STRIPPENDALES69 LLC,<br><br>Defendants. | Case No. 2:23-cv-08630-PA-PD<br><br>**DEFENDANTS' SUR-REPLY IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Judge: Hon. Percy Anderson<br>Crtrm: 9A |

Pursuant to the Court's Order dated April 30, 2025 (Dkt. 105), Defendants Chris Bane, Strippendales LLC, Strippendales Corporation, and Strippendales69 LLC ("Defendants") submit this Sur-Reply in support of their Opposition to Plaintiff Chippendales USA, LLC's Motion for Partial Summary Judgment (the "Motion").

## I. INTRODUCTION

While Plaintiff Chippendales USA, LLC ("Plaintiff") purports to be the owner of the disputed trademarks it asserts in this case, it is undisputed that Plaintiff has not used those disputed trademarks in commerce and has not generated any revenue since at least 2020. Rather, a separate entity and nonparty to this litigation, Chippendales Las Vegas, LLC ("Chip LV"), engaged in all uses in commerce and generated all revenues related to the disputed trademarks that Plaintiff seeks to attribute to itself. And Plaintiff testified under oath that Chip LV does not have any license agreements or other contracts with Plaintiff regarding the disputed trademarks. Nonetheless, in support of its reply brief, Plaintiff submitted a declaration from its same corporate representative, Sean Canavan, contradicting his sworn deposition testimony and broadly claiming instead that Chip LV has "permission" to use the disputed trademarks. Unsurprisingly, Plaintiff failed to submit any evidence concerning the terms of the purported license or its scope.

This dichotomy in ownership and use of the disputed marks is fatal to Plaintiff's motion for two distinct reasons. First, Plaintiff's inability to establish its own use in commerce of the disputed trademarks raises triable issues of fact concerning its ownership over those marks. Second, Plaintiff has no standing to seek relief for harm it could not have suffered; because Plaintiff does not engage in commerce and has no revenue, any harm suffered as a result of the Defendants' purported (and disputed) infringing conduct was not suffered by Plaintiff. Accordingly, Plaintiff cannot meet its burden both to establish ownership of the disputed trademarks and harm caused by the infringing use thereof.

Accordingly, the Court should deny Plaintiff's Motion.

## II. ARGUMENT

### A. Plaintiff Failed to Establish Use in Commerce of the Disputed Trademarks.

As a threshold matter, Plaintiff must demonstrate "use in commerce" to establish ownership over disputed trademarks. *See* 15 U.S.C. § 1127 (defining "use in commerce" to mean "the bona fide use of a mark in the ordinary course of trade, and not merely to reserve a right in a mark."); *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1203 (9th Cir. 2012) (same). "Use in commerce" requires that there be a continuing effort or intent to continue such use and to place the product or service on the market. *Lodestar Anstalt v. Bacardi & Co. Ltd.*, 31 F.4th 1228, 1256 (9th Cir. 2022). For example, in *Chance v. Pac-Tel Teletrac Inc.*, the plaintiff's failure to submit evidence of continued exploitation of the disputed mark did not constitute adequate use in commerce to establish ownership despite some initial effort to market his service. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1158-60 (9th Cir. 2001).

Plaintiff plainly does not use the disputed trademarks in commerce because it does not generate **any** revenue, let alone revenue from purported use of trademarks. DSUF, 42-43. Compare, Chip LV alone realizes revenues from the advertising and sale of tickets to the "Chippendales" show in Las Vegas and through touring (Canavan Tr. 109:22-110:14 [Dkt. 99]), from sales of merchandise (*Id.*, at 57:23-58:2; 63:23-25), and through licenses with third parties (*Id.*, at 58:3-6; 61:24-62:25). Moreover, Plaintiff does not hold any license agreements for use of its trademarks. (*See Id.*, at 67:5-8 (admitting that Plaintiff does not have a license agreement with any entity to use the disputed trademarks)). Since at least 2020, Plaintiff has not engaged in any commercial activity. Rather, Plaintiff simply holds purported interest in the disputed trademarks—*i.e.*, merely reserving rights in those marks. (*Id.*, at 63:23-25; 64:10-12; 67:5-8).

Further, Mr. Canavan's reply declaration is insufficient evidence that any license—oral, implied, or otherwise—exists as between Plaintiff and Chip LV or that

Plaintiff exercises adequate control with respect to the quality of goods and services that Chip LV offers for sale. *Secular Organizations for Sobriety, Inc. v. Ullrich*, 213 F.3d 1125, 1131 (9th Cir. 2000) (rejecting plaintiff's related companies doctrine argument where there was insufficient showing of a substantial relationship with purported subsidiaries). Rather, Mr. Canavan's dubious declaration is limited to a general claim that Chip LV has Plaintiff's permission to use the disputed trademarks. DSUF, 44; (Dkt. 103-3). And Plaintiff's failure to submit evidence concerning the terms of the purported license with Chip LV raises triable issues of fact concerning whether Plaintiff exercised adequate quality control over Chip LV's use of the disputed trademarks to establish shared trademark rights. *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 516 (9th Cir. 2010) (absence of agreement with provisions concerning quality control may constitute naked licensing that could result in loss of trademark rights); *Halo Mgmt., LLC v. Interland, Inc.*, 308 F. Supp. 2d 1019, 1028 (N.D. Cal. 2003) (explaining that a trademark is not protected where the trademark holder grants a license that "'fails to exercise quality control over the licensee'" (quoting *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 596 (9th Cir.2002)).

Therefore, there are triable issues of fact concerning Plaintiff's claim of ownership of the disputed trademarks because there is no evidence of bona fide use in commerce. *Rearden LLC*, 683 F.3d at 1207-08.

**B.** **Bedrock Principles of Corporate Law and Supreme Court Authority Require That a Plaintiff Cannot Recover for Purported Harm Suffered by an Affiliated but Separate Non-Party Entity.**

**1.** **Plaintiff Cannot Show Use in Commerce or Damages Based on The Conduct of A Separate But Affiliated Non-Party.**

In *Dewberry Grp., Inc. v. Dewberry Eng'rs Inc.*, 145 S. Ct. 681 (2025) ("*Dewberry*") the Supreme Court in a Lanham Act case overturned a $43 million damages award on the basis that the plaintiff could not disgorge "defendant's profits" from an affiliated but separate entity. The *Dewberry* trial court found the defendant

liable for "intentional, willful, and in bad faith" trademark infringement and awarded $43 million in "defendant's profits" to the plaintiff. *Id.*, 685. But the lone Dewberry defendant reported no profits.

> "Rather, the District Court found, the profits from the Group's illicit conduct (as from all its services) "show up exclusively on the [property-owning affiliates'] books. To reflect that "economic reality," the court decided to treat Dewberry Group and its affiliates "as a single corporate entity" for purposes of calculating a profits award. If those companies were viewed separately, the court reasoned, the "entire Dewberry Group enterprise" would "evade the financial consequences of its willful, bad faith infringement." By contrast, considering the companies together would prevent the "unjust enrichment" that the Act was meant to target.

*Id.*, 685–86 (internal citations omitted). The Court of Appeals affirmed, given the "economic reality" of the defendant and affiliated companies. The Court of Appeals also noted, "[i]t did not matter that the affiliates, rather than the Group, "receive[d] the revenues" earned, given the links among those companies." *Id.*, 686.

But the Supreme Court disagreed. That Court relied on "bedrock" corporate law principles, finding that,

> "[I]t is long settled as a matter of American corporate law that separately incorporated organizations are separate legal units with distinct legal rights and obligations." *687 *Agency for Int'l Development v. Alliance for Open Society Int'l Inc.*, 591 U.S. 430, 435, 140 S.Ct. 2082, 207 L.Ed.2d 654 (2020). And that is so even if the entities are affiliated—as they are here by virtue of having a common owner. See ibid.; *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474–475, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003).

*Id.*, 686–87. As such, the Court overturned the $43 million damages award on the basis that the plaintiff could not recover on a Lanham Act claim "defendant's profits" from an affiliated but separately organized entity.

Here, while this case presents an inverse in facts, "the demand to respect corporate formalities remains." *Id.*, 687. While 15 U.S.C. § 1055 generally permits

ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:23-cv-08630-PA-PD    5    DEFS' SUR-REPLY ISO OPP. TO PL'S MOTION FOR PARTIAL SUMMARY JUDGMENT

use of a trademark by related companies without impacting ownership of a mark, that does not resolve the issue of whether Plaintiff is able to recover for infringement of trademarks it does not use, based on use by an affiliated but separate non-party. Rather, applying the *Dewberry* principles, a party is not entitled to the benefit of creative accounting, realizing no revenue, only to borrow "use in commerce" of its trademarks, let alone stage a damages case based on the conduct of an affiliated but separate corporate entity.

### 2. Plaintiff Fails to Demonstrate that it Can Seek Relief For Infringement Based on Goods And Services of An Affiliated but Separate Nonparty Entity.

Because Plaintiff has not suffered redressable harm it is not entitled to a judicial finding of ownership of trademarks that have not been infringed. Defendants' use of their Strippendales trademarks has not adversely impacted Plaintiff whatsoever. *See* DSUF, 39, 51-54. Defendants also did not use the disputed trademarks. *Id.*, 64-67. Further, Plaintiff's admissions in its deposition testimony regarding the lack of evidence of Defendants' alleged infringement are relevant to whether the Court should even consider Plaintiff's Motion.

As Defendants demonstrated in their Opposition, Defendants do not offer for sale and have not sold most of the goods and services in the classes for which Plaintiff's disputed trademarks are registered. *See* DSUF, 66-67 (citing deposition testimony of Joseph Giovanni admitting that Plaintiff is unaware of Defendants' infringement with respect to several goods and services). In fact, Chippendales testified on May 7, 2025, that it could not describe any of Defendants' goods that Plaintiff contends infringe on any of disputed marks. This evidence of non-infringement is relevant and should be considered by the Court because it impacts whether Plaintiff can maintain this action in the first place. *Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC*, 331 F. Supp. 3d 1131, 1139 (D. Idaho 2018) ("If a defendant does not use the mark in commerce, a plaintiff's claim for trademark

infringement fails as a matter of law." (quoting *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005)); *see also Yammine v. Toolbox for HR Spolka z Ograniczona Odpowiedzialnoscia Spolka Komandytowa*, 2023 WL 6259412, at *5 (D. Ariz. Aug. 8, 2023) (granting summary judgment in favor of counterclaimant as to trademark infringement counterclaim where there was no evidence of counterclaimant's infringing use in commerce).

Nonetheless, Plaintiff made the tactical decision to seek judicial confirmation of ownership over all the disputed trademarks. But it would be improper for the Court to issue an opinion as to Plaintiff's ownership of the "disputed trademarks" when the undisputed record confirms that Defendants did not engage in competing uses of at least some of those marks, including for waiter services, bar services, barware, party supplies, electronic massagers, posters, calendars, playing cards, CDs, DVDs, videocassettes, and others. DSUF, 66-67. It strains credulity for Plaintiff to argue that this evidence is not relevant to the ownership issue raised in its Motion when Plaintiff's failure to show that Defendant used the disputed trademarks in commerce to begin with is itself sufficient for the Court to deny the Motion.

### III. CONCLUSION

For the foregoing reasons, Defendants request that the Court deny Plaintiff's Motion.

Dated: May 8, 2025

**ARENTFOX SCHIFF LLP**

By: */s/ Kirsten A. Hart*
Kirsten A. Hart
Ross Q. Panko
Oscar A. Figueroa
Attorneys for Defendants
CHRIS BANE (*erroneously sued as* "CHRISTIAN BANERJEE"), STRIPPENDALES CORPORATION, STRIPPENDALES LLC, and STRIPPENDALES69 LLC